1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

GREGGORY SLEETH,

          Plaintiff,

v.

JOHN N. KATAVICH, et. al.,

          Defendants.

_____/

CASE NO.   1:11-cv-01961-LJO-MJS (PC)

ORDER DISMISSING PLAINTIFF'S
COMPLAINT, WITH LEAVE TO AMEND,
FOR FAILURE TO STATE A CLAIM

(ECF No. 1)

AMENDED COMPLAINT DUE WITHIN
THIRTY DAYS

Plaintiff Greggory Sleeth ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff initiated this action on November 28, 2011. (ECF No. 1.) No other parties have appeared. Plaintiff's Complaint is now before the Court for screening.

For the reasons stated below, the Court finds that Plaintiff fails to state a cognizable claim. He will be given leave to amend.

## I.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be

1  granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

2  A complaint must contain "a short and plain statement of the claim showing that the

3  pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are

4  not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by

5  mere conclusory statements, do not suffice." Ashcroft v. Iqbal, ____ U.S. ____, ____, 129

6  S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

7  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is

8  plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).

9  Facial plausibility demands more than the mere possibility that a defendant committed

10  misconduct and, while factual allegations are accepted as true, legal conclusions are not.

11  Id. at 1949-50.

12  **II.    PLAINTIFF'S CLAIMS**

13  Plaintiff is currently incarcerated at Kern Valley State Prison.  He was previously

14  incarcerated at California Substance Abuse Treatment Facility ("CSATF") in Corcoran,

15  California and at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California.

16  It appears that the events at issue occurred at CSATF and RJD.  Plaintiff alleges that he

17  was retaliated against in violation of the First, Eighth, and Fourteenth Amendments.

18  Plaintiff names the following individuals as Defendants: 1) M. Dean, correctional

19  officer ("C/O"), 2) Lopez, C/O, 3) Jimenez, C/O, 4) Amoro, C/O, 5) Saleas, C/O, 6) J.

20  Villegas, C/O, 7) J. Mendez, C/O, 8) F. Alcantra, C/O, 9) Hopkins, C/O, 10) Ayon, C/O, 11)

21  Kathleen Allison, CSATF warden, 12) J. Cronjaver, associate warden of medical

22  management at CSATF, 13) R. Hall, appeals coordinator, 14) D. James, lieutenant , 15)

23  D. Plunkett, Sergeant, 16) Journagan, Psy. Technician, 17) Byers, Physician's Assistant,

24  18) Hunt, nurse, 19) Matthew Cates, CDCR secretary, 20) George J. Guirbino, director

25  adult institutions, 21) D. Foston, chief appeals, and 22) John Does #1-3, appeals

26  examiners.

27  Plaintiff asks that he be transferred to another facility to be closer to his family, his

28  television be replaced or he be given $250, Plaintiff's legal materials be returned to him,

1  and he be released on his original release date.   He also asks for $200,000 in

2  compensatory damages, $200,000 in punitive damages, declaratory relief, and attorney's

3  fees.

4          Plaintiff allegations are as follows:

5          Plaintiff begins his Complaint with a page of stream-of-consciousness complaints

6  regarding the treatment he has received while incarcerated.   (Compl. at 5.)   Plaintiff

7  mentions retaliation, assaults, denial of food, denial of medical treatment, manufactured

8  disciplinary reports, and broken televisions.   (Id.)

9          Defendants Cates, Gurbino, Foston, Does #1-3, Allison, Cronjaver, Hall, James, and

10  Plunkett, were responsible for promulgating, supervising, and implementing policies

11  regarding the use of force, medical treatment, retaliation, food, clothing, and inmate

12  appeals.  (Compl. at 6.)

13          On May 21, 2010, after Plaintiff verbally requested that C/Os stop denying him food,

14  Defendant Dean verbally assaulted Plaintiff while escorting him.  (Compl. at 7.)  By doing

15  so, Defendant violated California Code of Corrections ("CCR") regulations.  (Id.)  Plaintiff's

16  complaint[1] led to retaliation by Defendant Dean, other C/Os, Defendant Hall, and

17  Defendant Allison, leading to "Eighth Amendment assaults" and denial of Plaintiff's right

18  to due process under the Fourteenth Amendment.  (Id.)   The complaint was partially

19  granted by Doe #1, an appeals coordinator, and D. Foston, the chief of appeals.  (Id.) Both

20  these Defendants failed in their duties by participating in another's affirmative acts.  (Id.)

21  Defendants Gurbino and Cates failed to protect Plaintiff.  (Id. at 7-8.)

22          On May 30, 2010, Plaintiff received a falsified 114-D and a 115, which were filed in

23  retaliation against Plaintiff, regarding a battery.  (Compl. at 8.)   Defendant Dean alleged

24  Plaintiff had removed his handcuffs.  (Id.)  On May 31, 2010, Plaintiff filed another

25  complaint against Defendant Dean for her false battery claim.  (Id.)  This complaint was

26  _____

27          [1] It appears that Plaintiff filed a grievance regarding either his food or Defendant Dean's verbal
    insults.  (Compl. at 7.)  If he chooses to file an amended complaint, Plaintiff needs to concisely explain this
28  sequence of events, and explain when he filed a grievance, what it was about, against whom it was
    directed, who reviewed it, and what retaliation resulted from the grievance.

1
2
3
4
5
6

reviewed by Defendant Cronjaver, and he allowed violations under the First and Eighth Amendments to continue. (Id.) He also denied Plaintiff's right to due process under the Fourteenth Amendment. (Id.) The complaint was partially granted, and someone else signed it for Defendant Allison. (Id.) The person who responded to the complaint in Defendant Allison's name supported the retaliation and participated in Defendant Dean's acts. (Id. at 9.)

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

On June 15, 2010, Plaintiff filed a complaint[2] due to a C/O verbally threatening him with harm in retaliation for filing complaints against Defendant Dean. (Compl. at 9.) On June 8, 2010, Plaintiff discovered staff had assigned him a specific cell-mate, with the hope that the cell-mate would harm Plaintiff. (Id.) Plaintiff tried to prevent being housed with this individual and refused to go into the cell with this individual. (Id.) Defendants Hopkins and Ayon forced Plaintiff into the cell; Defendant Hopkins twisted Plaintiff's left arm as Defendant Ayon forced him into the back of the cage. (Id.) Defendant Hopkins said that the actions were for Plaintiff's "battery on C/O Dean." (Id.) Afterwards, Defendant Journagan refused to assess the injuries to Plaintiff's hands and head, and threatened Plaintiff with the loss of his property if he did not go into the cell with his new cell-mate. (Id.) These actions violated Plaintiff's rights under the First Amendment, Eighth Amendment, CCR 3268(a)(3), CCR 3354(a), and the Fourteenth Amendment Due Process Clause. (Id.) The second level of the appeal was partially granted, but Defendant Hall never discussed this issue with Plaintiff, thereby participating in Defendants Ayon, Hopkins, and Journagan's violations. (Id.) The third level reviewer, Defendants Doe # 2 and Foston also failed in their job duties by participating in others' acts. (Id. at 9-10.) Defendants Gurbino and Defendant Cates were also aware of these violations and are liable for failure to protect. (Id. at 10.)

25
26

On July 19, 2010, Defendant Villegas filed a 115 disciplinary report in retaliation against Plaintiff for his complaints filed against Defendant Dean. (Compl. at 10.)

27
28

---

[2] It is not clear if this complaint directly related to the June 8, 2010 incident. If Plaintiff chooses to file an amended complaint, he should clarify this.

1   Defendant Villegas accused Plaintiff for having his cell windows covered. (Id.) For ten

2   days, Plaintiff was on "Hodol", a psychological medication, that caused Plaintiff's neck and

3   jaw to lock up. (Id.) Plaintiff was denied medical treatment and was eventually taken to

4   the medical crisis unit because he was suicidal. (Id.) Defendant Mendez was the

5   investigative employee for the 115 and Defendant Alcantra was the staff assistant, and

6   both denied Plaintiff any assistance. (Id.) Plaintiff is Caucasian, and most of the C/Os are

7   Hispanic and participate in the "Green Wall". (Id.) All of these Defendants violated

8   Plaintiff's rights under the First Amendment, Sixth Amendment, Due Process Clause of the

9   Fourteenth Amendment, and Eighth Amendment. (Id.)

10      On September 15, 2011, Plaintiff filed a third staff complaint against Defendant

11   Dean. (Compl. at 10.) Defendant Dean would kick Plaintiff's cell door if he was resting or

12   asleep. (Id.) Plaintiff would refuse to accept laundry from her through the tray slot. (Id. at

13   10-11.) Defendant James came to Plaintiff's door and accused Plaintiff of using profanity

14   on his staff. (Id. at 11) Plaintiff's complaint was partially granted. (Id.) Defendant Hall,

15   the individual signing on behalf of Defendant Allison, Defendant Doe # 3, Defendant

16   Foston, Defendant Gurbino, and Defendant Cates all affirmed Defendant Dean's acts and

17   are liable for failure to protect. (Id.)

18      On November 7, 2010, Plaintiff wrote "letters of assault" by Defendant Lopez, in

19   which he alleged he was not allowed to have any meat substitute on his vegetarian tray.

20   (Compl. at 11.) Defendant Amoro verbally assaulted Plaintiff when he asked for a meat

21   substitute and to see the sergeant on duty. (Id.) Defendant Lopez, the sergeant on duty,

22   entered Plaintiff's cell, grabbed Plaintiff's hands, and pulled Plaintiff to the floor. (Id. at 11-

23   12.) Plaintiff's head hit the floor and Defendant Lopez started choking Plaintiff. (Id. at 12.)

24   Defendant Lopez continued to assault Plaintiff and pepper sprayed him. (Id.)

25      On November 16, 2010, Plaintiff filed a staff complaint regarding Defendant Lopez's

26   assault. (Compl. at 12.) Defendant Hall and the unknown individual signing for Defendant

27   Allison partially granted the complaint. (Id.) Defendant Hall made false claims that he

28

investigated the incident. (Id.) Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment was violated. (Id.)

From July 2010 to January 2011, Plaintiff turned in many "sick-call" forms, which were lost. (Compl. at 12.) Defendants Byers and Hunt were deliberately indifferent to Plaintiff's requests for treatment for his pain. (Id. at 13.) Plaintiff discovered he had hepatitis and spleen damage when he was taken to the hospital. (Id.) Plaintiff's rights to be free from cruel and unusual punishment and to adequate medical care were violated. (Id.) He was also retaliated against in violation of the First Amendment.

On January 23, 2011, Plaintiff was placed in the Central Treatment Center. (Compl. at 13.) C/O Salinas told Plaintiff to go to a cell with toilet water and feces. (Id.) Plaintiff refused to be housed in this cell, and C/O Salinas wrote up Plaintiff for a 115. (Id.) C/O Salinas' actions were a result of his participation in the "Green Wall". (Id.) Plaintiff's rights under the Eighth and First Amendment were violated.

On March 9, 2011, Plaintiff filed a staff complaint against Defendant Jimenez. (Compl. at 13.) This complaint related to a February 10, 2011, incident, when Defendant Jimenez placed waist chains on Plaintiff with a tri-bar in front, instead of the back. (Id.) This led to Plaintiff having trouble breathing, and when he asked that the chains be loosened, Defendants Jimenez and Lopez laughed at him and taunted him. (Id.) Defendant Jimenez did this in response to Plaintiff's complaints. (Id.) Defendant Jimenez also tripped Plaintiff, threw him on the floor, and slammed his face. (Id. at 13-14.) These actions were taken in retaliation for Plaintiff's complaints. (Id. at 14.) Plaintiff's rights under the First and Eighth Amendments were violated.

At some point in March 2011, Plaintiff was transferred to RJD, and he filed a 602 appeal for a television that was broken in retaliation. (Compl. at 14-15.) Plaintiff submitted various documents regarding this television. (Id. at 15.) Defendant Hall made false claims in an interview to perpetuate the "Green Wall" conspiracy. (Id.) These actions violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment. (Id.)

When Plaintiff was transferred to RJD, he asked for his 602 complaints and legal

papers from the Ad-Seg property officer four times. (Compl. at 15.) Plaintiff filed an appeal regarding these documents. (Id.) Sergeant Alvarez and Ad-Seg Property Officer Solis perpetuated the "Green Wall" by only bringing Plaintiff his address book. (Id.) Plaintiff's rights under the First Amendment were violated.

Plaintiff has medical conditions that are serious and need ongoing treatment. (Compl. at 16.) If left untreated, these conditions could cause serious injury. (Id.) They include hepatitis, spleen and facial bone pain, among many others. (Id.) Defendants have subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment. (Id. at 17.)

## III.   ANALYSIS

### A.   Section 1983 Claims

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir.1987).

### B.   Federal Rule of Civil Procedure 18(a)

Fed. R. Civ. P. 18(a) states that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of

morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

The fact that claims are premised on the same type of constitutional violation(s) (i.e. deliberate indifference) against multiple defendants does not make them factually related. Claims are related where they are based on the same precipitating event, or a series of related events caused by the same precipitating event.

Plaintiff's Complaint contains a number of unrelated claims in violation of rule 18. The Court identifies multiple distinct groupings of unrelated claims in Plaintiff's allegations: (1) retaliation claims resulting from complaints filed against Defendant Dean, and other constitutional violations arising from these acts of retaliation while Plaintiff was at CSATF, (2) claims related to Defendant Lopez's assault on Plaintiff when Plaintiff asked for a meat substitute, (3) Defendants Byers and Hunt's denial of medical care, and (4) claims arising out of Plaintiff's time at RJD.[3]

The Court will review and discuss all of Plaintiff's claims and the law applicable to them so that Plaintiff might evaluate which, if any, he feels may be and should be pursued here and which, if any, may be and should be pursued in different actions.[4]

Plaintiff must initiate a separate action, i.e., file a separate civil complaint, on each unrelated claim against different defendants at different facilities. If he does not, all unrelated claims will be subject to dismissal.

**B.    Linkage Requirement**

As an initial issue, Plaintiff has not stated a claim against Defendants Saleas,

---

[3] Plaintiff should note that RJD is not within this Court's jurisdiction, and any claims he wishes to make regarding incidents that occurred there should not be raised in his amended complaint. Plaintiff should file a separate action with the Southern District of California regarding any claims arising out of his time at RJD.

[4] Plaintiff is reminded that filing an action based on claims that are not cognizable and/or frivolous may adversely affect his ability to file actions in forma pauperis in the future. 28 U.S.C. § 1915(g).

1  Plunkett, and Journagan because he has not linked them to any direct violation of his rights.

2  Plaintiff has also not stated a claim against Defendants Cates, Gurbino, and Foston

3  because he brings these claims against them in their supervisory capacities.

4  Under section 1983, Plaintiff must demonstrate that each named Defendant

5  personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934

6  (9th Cir. 2002).  The Supreme Court has emphasized that the term "supervisory liability,"

7  loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S.

8  Ct. at 1949.  "Government officials may not be held liable for the unconstitutional conduct

9  of their subordinates under a theory of respondeat superior." Id. at 1948.  Rather, each

10  government official, regardless of his or her title, is only liable for his or her own misconduct,

11  and therefore, Plaintiff must demonstrate that each defendant, through his or her own

12  individual actions, violated Plaintiff's constitutional rights. Id. at 1948–49.

13  Plaintiff has not alleged facts demonstrating that Defendants Saleas, Plunkett,

14  Journagan, Cates, Gurbino, and Foston personally acted to violate his rights.  Plaintiff shall

15  be given the opportunity to file an amended complaint curing the deficiencies in this respect.

16  In his amended complaint, Plaintiff needs to specifically link each of these Defendants to

17  a violation of his rights.

18  **C.    Retaliation & Related Claims**

19  The Court will first lay out the standards for stating retaliation and access to the

20  courts claims under the First Amendment; excessive force, conditions of confinement,

21  inadequate medical care, and failure to protect claims under the Eighth Amendment; and

22  denial of due process claims under the Fourteenth Amendment.  Then the Court will go

23  through each alleged incident by date and determine if Plaintiff stated a cognizable claim

24  arising from each incident.

25  .          1.     Standards

26                a.     First Amendment - Retaliation

27  "Within the prison context, a viable claim of First Amendment retaliation entails five

28

-9-

basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

Filing a grievance is protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Pursuing a civil rights legal action is also protected under the First Amendment. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity...." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532.

//

1                           b.        First Amendment - Access to the Courts

2              Prisoners have a fundamental constitutional right of access to the courts.  Lewis v.

3    Casey, 518 U.S. 343, 346 (1996).  This right is essentially limited to direct criminal appeals,

4    habeas petitions and civil rights actions pursuant to 42 U.S.C. § 1983.  Id., at 354.  To

5    establish a violation of his constitutional right to court access, plaintiff must show an "actual

6    injury."  Id., at 349.  The high court held that before a denial of access to the courts claim

7    can go forward, an inmate must "demonstrate that a nonfrivolous legal claim had been

8    frustrated or was being impeded."  Id., at 351–53, 355.

9                           c.        Eighth Amendment - Conditions of Confinement

10             The treatment a prisoner receives in prison and the conditions under which the

11   prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits

12   cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31, (1993); Farmer

13   v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment "embodies broad and

14   idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v.

15   Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and

16   restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison

17   officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and

18   personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison

19   official violates the Eighth Amendment only when two requirements are met: (1) objectively,

20   the official's act or omission must be so serious such that it results in the denial of the

21   minimal civilized measure of life's necessities; and (2) subjectively, the prison official must

22   have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511

23   U.S. at 834.   Thus, to violate the Eighth Amendment, a prison official must have a

24   "sufficiently culpable mind."  See id.

25             "To sustain an Eighth Amendment claim, the plaintiff must prove a denial of 'the

26   minimal civilized measure of life's necessities,' occurring through 'deliberate indifference'

27   by prison personnel or officers."  Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)

28   (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981), Wilson v. Seiter, 501 U.S. 294,

1   302-03 (1991)).  However, temporary unconstitutional conditions of confinement do not rise

2   to the level of constitutional violations.  See Anderson v. County of Kern, 45 F.3d 1310 (9th

3   Cir. 1995).

4                         d.      Eighth Amendment - Failure to Protect

5          [A] prison official may be held liable under the Eighth Amendment for denying

6   humane conditions of confinement only if he knows that inmates face a substantial risk of

7   serious harm and disregards that risk by failing to take reasonable measures to abate it."

8   Farmer v. Brennan, 511 U.S. 825, 847 (1994).   Prison officials are required to take

9   reasonable measures to guarantee the safety of inmates and officials have a duty to protect

10  prisoners from violence at the hands of other prisoners.  Farmer, 511 U.S. at 832–33; Frost

11  v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).   An inmate has no constitutional right,

12  however, to enjoy a particular security classification or housing.  See Meachum v. Fano, 427

13  U.S. 215, 224–25 (1976) (no liberty interest protected by the Due Process Clause is

14  implicated in a prison's reclassification and transfer decisions); see also Myron v. Terhune,

15  476 F.3d 716, 718 (9th Cir. 2007).  Further, "[v]erbal harassment or abuse ... is not sufficient

16  to state a constitutional deprivation[.]"  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir.

17  1987) (quoting Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)).

18         Rather, to state a claim for threats to safety, an inmate must allege facts to support

19  that he was incarcerated under conditions posing a substantial risk of harm and that prison

20  officials were "deliberately indifferent" to those risks.  Farmer, 511 U.S. at 834; Frost, 152

21  F.3d at 1128; Redman v. County of Los Angeles, 942 F.2d 1435, 1443 (9th Cir. 1991) (en

22  banc).   To adequately allege deliberate indifference, a plaintiff must set forth facts to

23  support that a defendant knew of, but disregarded, an excessive risk to inmate safety.

24  Farmer, 511 U.S. at 837.  That is, "the official must both [have been] aware of facts from

25  which the inference could be drawn that a substantial risk of serious harm exist[ed], and he

26  must also [have] draw[n] the inference."  Farmer, 511 U.S. at 837; Frost, 152 F.3d at 1128;

27  Redman, 942 F.2d at 1442.

28  ///

e.      Eighth Amendment - Medical Care

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285 (1976)).  The two part test for deliberate indifference requires Plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

To show deliberate indifference, Plaintiff must show "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).  "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. Cnty. of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

f.      Eighth Amendment - Excessive Force

The analysis of an excessive force claim brought pursuant to Section 1983 begins with "identifying the specific constitutional right allegedly infringed by the challenged application of force."  Graham v. Connor, 490 U.S. 386, 394 (1989). The Eighth Amendment's prohibition on cruel and unusual punishment applies to incarcerated individuals, such as the Plaintiff here. Whitley v. Albers, 475 U.S. 312, 318 (1976). To state an Eighth Amendment claim, a plaintiff must allege that the use of force was "unnecessary

1    and wanton infliction of pain." <u>Jeffers v. Gomez</u>, 267 F.3d 895, 910 (9th Cir. 2001).  The

2    malicious and sadistic use of force to cause harm always violates contemporary standards

3    of decency, regardless of whether or not significant injury is evident.  <u>Hudson v. McMillian</u>,

4    503 U.S. 1, 9 (1992); <u>see also</u> <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth

5    Amendment excessive force standard examines de minimis uses of force, not de minimis

6    injuries).  However, not "every malevolent touch by a prison guard gives rise to a federal

7    cause of action." <u>Hudson</u>, 503 U.S. at 9.  "The Eighth Amendment's prohibition of cruel and

8    unusual punishments necessarily excludes from constitutional recognition de minimis uses

9    of physical force, provided that the use of force is not of a sort repugnant to the conscience

10   of mankind." <u>Id.</u> at 9-10 (internal quotations marks and citations omitted).

11          Whether force used by prison officials was excessive is determined by inquiring if the

12   "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

13   sadistically to cause harm." <u>Hudson</u>, 503 U.S. at 6-7.  The Court must look at the need for

14   application of force; the relationship between that need and the amount of force applied;

15   the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as

16   reasonably perceived by prison officials; and any efforts made to temper the severity of the

17   response.  <u>See</u> <u>Whitley</u>, 475 U.S. at 321.  The absence of significant injury alone is not

18   dispositive of a claim of excessive force.  <u>See</u> <u>Wilkens v. Gaddy</u>, ___ U.S. ___, ___, 130

19   S.Ct. 1175, 1176-77 (2010).

20                    g.    Fourteenth Amendment - Due Process Claim

21          The Due Process Clause protects prisoners from being deprived of property without

22   due process of law, <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  Prisoners have a

23   protected interest in their personal property, <u>Hansen v. May</u>, 502 F.2d 728, 730 (9th

24   Cir.1974).  However, while an authorized, intentional deprivation of property is actionable

25   under the Due Process Clause, <u>see</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 532, n. 13 (1984)

26   (citing <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 435–36 (1982)); <u>Quick v. Jones</u>, 754

27   F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations

28   of property by a governmental employee "constitute a violation of the procedural

1  requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post

2  deprivation remedy for the loss is available," Hudson, 468 U.S. at 533; see also Raditch v.

3  United States, 929 F.2d 478, 481 (9th Cir. 1991) ("Although Hudson involved § 1983 and

4  the Fourteenth Amendment, the same due process principles apply to the federal

5  government through the Fifth Amendment.").

6       California Law provides an adequate post-deprivation remedy for any property

7  deprivations.  See Cal. Gov't Code §§ 895; Barnett v. Centoni, 31 F.3d 813, 816–17 (9th

8  Cir. 1994).  California's Tort Claims Act requires that a tort claim against a public entity or

9  its employees be presented to the California Victim Compensation and Government Claims

10 Board, formerly known as the State Board of Control, no more than six months after the

11 cause of action accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2.

12 Presentation of a written claim, and action on or rejection of the claim, are conditions

13 precedent to suit.  State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 13

14 Cal.Rptr.3d 534, 90 P.3d 116, 123 (2004); Mangold v. California Pub. Utils. Comm'n, 67

15 F.3d 1470, 1477 (9th Cir. 1995).  To state a tort claim against a public employee, a plaintiff

16 must allege compliance with the Tort Claims Act.  State v. Superior Court, 13 Cal.Rptr.3d

17 534, 90 P.3d at 123; Mangold, 67 F.3d at 1477; Karim–Panahi v. Los Angeles Police Dept.,

18 839 F.2d 621, 627 (9th Cir. 1988).

19                     h.     Due Process - Grievance Process

20       The Due Process Clause protects prisoners from being deprived of liberty without

21 due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a

22 cause of action for deprivation of due process, a plaintiff must first establish the existence

23 of a liberty interest for which the protection is sought.  Liberty interests may arise from the

24 Due Process Clause itself or from state law.  Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).

25 Liberty interests created by state law are generally limited to freedom from restraint which

26 "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents

27 of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).

28       In Mann v. Adams, 855 F.2d 639 (9th Cir. 1988), the Ninth Circuit held that a prisoner

                                   -15-

1  does not have a claim of entitlement to a grievance procedure. 855 F.2d at 640.  This was

2  reiterated in Ramirez v. Galarza, 334 F.3d 850 (9th Cir. 2003), when the Ninth Circuit

3  observed that inmates do not have a separate constitutional entitlement to a grievance

4  procedure.  Thus, the case law is clear that Plaintiff is not entitled, as a matter of federal

5  law, to a particular grievance procedure.

6          2.      Incidents

7                  a.      Claims Arising Out of May 21, 2010 Grievance

8          Plaintiff alleges that Defendant Dean and others verbally assaulted him after Plaintiff

9  made a verbal complaint regarding his meals and/or Defendant Dean's verbal assault.

10  Defendants Dean, Hall, and Allison retaliated against him, committed "Eighth Amendment

11  assaults" against him, and violated his due process rights.

12         Plaintiff  has not satisfied any of the requirements of a retaliation claim.  He has not

13  adequately explained what protected action he was pursuing, what adverse actions these

14  Defendants took against him because of the protected conduct, whether the conduct would

15  have chilled an inmate's willingness to pursue his First Amendment rights, and whether

16  Defendants' actions could have advanced a legitimate correctional goal.  Plaintiff has not

17  stated a retaliation claim arising out of his May 21, 2010, verbal complaint.

18         Plaintiff has not explained what kind of Eighth Amendment violations occurred.  He

19  has not stated an Eighth Amendment claim.  He may wish to state a claim for excessive

20  force.  If so, he should review the standards set forth above before filing his amended

21  complaint.

22         Plaintiff's due process claim appears to be related to the grievance process.  As the

23  Court notes above, Plaintiff is not entitled, as a matter of federal law, to a particular

24  grievance procedure.  Plaintiff has failed to state a due process claim.  He should not try to

25  raise this claim again unless he can show it relates to something other than disatisfaction

26  with the grievance process.

27                  b.      Claims Arising Out of May 30, 2010 False 114-D and 115

28         Plaintiff alleges that he received a falsified 114-D and 115 on Mary 30, 2010, and on

1  May 31, 2010, he filed another grievance against Defendant Dean for her false battery

2  claim.  Plaintiff alleges that Defendant Cronjaver and an unknown individual reviewed the

3  grievance.

4        Plaintiff alleges that the 114-D and the 115 were filed in retaliation against him.

5  Plaintiff's pleading  does not satisfy the five requirements of a retaliation claim.  It fails  to

6  state a cognizable First Amendment claim.  Although there was an adverse action taken,

7  Plaintiff does not allege that he was engaged in a protected activity, that this protected

8  activity resulted in false a 114-D and 115 filed against him, that these could have chilled his

9  willingness to exercise his First Amendment rights, or that the rule violation reports did not

10  advance a legitimate penological goal.

11        Plaintiff has made a conclusory and unsupported allegation that his Eighth and

12  Fourteen Amendment rights were violated.  Plaintiff has failed to state a cognizable claim

13  under either amendment.

14        Before filing his amended complaint, Plaintiff should review the standards set forth

15  above and determine if it is even possible to state a cognizable claim under the First,

16  Eighth, or Fourteenth Amendment for the events arising out of these allegedly false rule

17  violation reports.

18              c.      Claims Arising Out of June 15, 2010 Grievance

19        On June 8, 2010, prior to filing his grievance, staff allegedly assigned Plaintiff a cell-

20  mate in the hope that this cell-mate would harm Plaintiff.  Defendants Hopkins and Ayon

21  allegedly took Plaintiff to his cell and said that he was being forced to be housed with this

22  cell-mate because of a grievance he filed against Defendant Dean.  At some unspecified

23  point Defendant Journagan allegedly refused to treat Plaintiff's injured hands and head.

24  Plaintiff alleges that these actions violated his rights under the First Amendment, Eighth

25  Amendment, various CCRs, and the Fourteenth Amendment.  Defendant Hall allegedly

26  reviewed the appeal, but did not discuss it with Plaintiff.

27        Plaintiff alleges that he was housed with a cell-mate and/or injured during the

28  transport in retaliation for a grievance he filed against Defendant Dean.  Here, although

1 there appears to have been an adverse action taken against Plaintiff for filing a grievance,

2 a protected activity, it is not clear if Plaintiff's retaliation claim arises from his housing

3 assignment or from injuries he sustained when he was transported to his cell.  Plaintiff has

4 not alleged sufficient facts regarding this incident for the Court to determine if he has

5 satisfied all of the five prerequisites of a First Amendment retaliation claim as set forth

6 above.

7        Plaintiff appears to also wish to allege an Eighth Amendment claim for inadequate

8 medical care and a due process claim under the Fourteenth Amendment.  He possibly

9 seeks to allege an Eighth Amendment claim for excessive force.  Again, Plaintiff has not

10 alleged sufficient facts for the Court to determine if he has a cognizable claim under any of

11 these sections.  Before filing an amended complaint, Plaintiff should review the standards

12 set forth above, determine whether it is possible he has a cognizable claim under any of

13 these amendments, and then amend his claims.

14              d.      Claims Arising Out of July 19, 2010 Disciplinary Report

15        On July 19, 2010, Defendant Villegas allegedly filed a 115 disciplinary report against

16 Plaintiff for having his cell windows covered.  This report was allegedly filed against Plaintiff

17 in retaliation for the complaints Plaintiff filed against Defendant Dean.  Plaintiff was allegedly

18 denied medical treatment.  Defendants Mendez and Alcantra allegedly investigated the 115,

19 but denied Plaintiff any assistance.  Plaintiff's rights under the First Amendment, Sixth

20 Amendment,[5] Fourteenth Amendment Due Process Clause, and Eighth Amendment were

21 allegedly violated.

22        Again, Plaintiff has not alleged sufficient facts for the Court to determine if he states

23 a cognizable claim for retaliation under the First Amendment.  He has alleged that there was

24 an adverse action taken against him because he attempted to engage in protected conduct.

25 However, Plaintiff has not denied his cell windows were covered; if they were, there likely

26

27        [5] The Sixth Amendment entitles criminals to the right to a speedy trial.  This amendment does not
28 apply to Plaintiff at this time, since Plaintiff is incarcerated and his claims do not directly relate to any
criminal prosecution.

-18-

1  was a legitimate penological reason for the disciplinary report filed against him. Plaintiff

2  has failed to state a retaliation claim under the First Amendment.

3       Plaintiff has again made a conclusory and unsupported allegation that his Eighth and

4  Fourteen Amendment rights were violated. Plaintiff has failed to state a cognizable claim

5  under either amendment.

6       Before filing his amended complaint, Plaintiff should review the standards set forth

7  above and determine if it is even possible to state a cognizable claim under these

8  amendments for the events arising out of this allegedly false rule violation report.

9                      e.     Claims Arising Out of September 15, 2011 Grievance

10      Plaintiff allegedly filed a third staff complaint against Defendant Dean on September

11  15, 2011. Either before or after Plaintiff filed this complaint, Defendant Dean allegedly had

12  a habit of kicking Plaintiff's door to disturb his sleep or rest. Defendant James allegedly

13  accused Plaintiff of using profanity on his staff. Defendant Hall and an unspecified

14  individual allegedly reviewed Plaintiff's complaint. Plaintiff alleges that he was retaliated

15  against in violation of the First Amendment and there was a failure to protect in violation of

16  the Eighth Amendment.

17      Plaintiff has not described the incident with enough clarity or detail for the Court to

18  determine if he has a cognizable claim. On his retaliation claim, it is unclear if Defendant

19  Dean kept Plaintiff from resting or sleeping before or after Plaintiff filed his complaint. The

20  Court cannot determine if Plaintiff has a cognizable First Amendment claim for retaliation

21  because it is unclear if Plaintiff's staff complaint was regarding Defendant Dean's actions

22  or if Defendant Dean's action were in retaliation for Plaintiff's staff complaint.  In his

23  amended complaint, Plaintiff should review the standards set forth above and lay out the

24  series of event in a clear and chronological manner.

25      Plaintiff has also not stated an Eighth Amendment claim because he does not

26  explain how any named Defendant failed to protect him and from what. Before filing his

27  amended complaint, Plaintiff should review the standards set forth above and determine if

28  it is even possible to state a cognizable claim under this amendment for this series of

1   events.

2            f.      Claims Arising Out of November 7, 2010 "Letters of Assault"

3   On November 7, 2010, Plaintiff allegedly wrote "letters of assault" regarding his

4   inability to receive a meat substitute on his vegetarian tray.  Defendant Amoro allegedly

5   verbally assaulted Plaintiff when he asked to see the sergeant regarding the lack of a meat

6   substitute.  When Defendant Lopez allegedly responded, he physically attacked Plaintiff.

7            Plaintiff has again made conclusory and unsupported allegations that his rights under

8   the Eighth and Fourteenth Amendment were violated.  Plaintiff has failed to state a

9   cognizable claim under either amendment.  Before filing his amended complaint, Plaintiff

10  should review the standards set forth above and determine if it is even possible to state a

11  cognizable claim under these amendments for the events arising out of this sequence of

12  events.

13           g.      Claims Arising Out of November 16, 2010 Staff Complaint

14  Plaintiff alleges that he filed a staff complaint regarding Defendant Lopez's assault,

15  Defendant Hall and an unknown individual partially granted the staff complaint, and

16  Defendant Hall falsely claimed to have investigated the incident.  Plaintiff alleges his right

17  to be free from cruel and unusual punishment under the Eighth Amendment was violated.

18  Plaintiff appears to wish to allege a claim arising out of the conditions of his

19  confinement under the Eighth Amendment.  To state a cognizable claim for cruel and

20  unusual punishment arising out of conditions of confinement, Plaintiff must allege that there

21  was an act or omission so serious that it amounted to a denial of the minimal civilized

22  measure of life's necessities and the prison official acted unnecessarily and wantonly for

23  the purpose of inflicting harm.  Here Plaintiff has not alleged facts for either of these prongs,

24  and has not stated a claim under the Eighth Amendment.  Before filing an amended

25  complaint, Plaintiff should review the standards set forth above and determine whether he

26  has a claim under the Eighth Amendment arising out of this series of events.

27           h.      Claims Arising Out of "Sick Call" Forms

28  Plaintiff alleges that the "sick-call" forms that he filed between July 2010 and January

1   2011 were lost, and that Defendants Byers and Hunt were deliberately indifferent to his

2   medical care, thereby violating his rights under the Eighth Amendment.  Plaintiff also alleges

3   that he was retaliated against in violation of the First Amendment.

4          Again, Plaintiff has not set forth sufficient facts to state a cognizable claim under the

5   First or Eighth Amendments.  To state an Eighth Amendment claim, Plaintiff must allege a

6   serious medical need and that the Defendants' response to the need was deliberately

7   indifferent.  Plaintiff has alleged neither.

8          Plaintiff has also not pled that he has satisfied any of the five prongs of a First

9   Amendment retaliation claim, as laid out repeatedly above.

10         Plaintiff should review the standards set forth above before filing his amended

11  complaint, determine if he might have a cognizable claim, and then set out the facts

12  regarding his claim in a clear and concise manner in his amended complaint.

13                        i.      Claims Arising Out of Placement in the Central Treatment

14                                Center

15         On January 23, 2011, Plaintiff was allegedly placed in the Central Treatment Center,

16  and C/O Salinas told Plaintiff to go into a cell with toilet water and feces.  Plaintiff alleges

17  that his rights under Eighth and First Amendments were violated.

18         As an initial matter, Plaintiff has not named C/O Salinas as a defendant in this action.

19  If Plaintiff wishes to allege a claim arising out of C/O Salinas' actions, he should name him

20  as a defendant in his amended complaint.

21         Plaintiff appears to wish to plead an Eighth Amendment claim arising out the

22  conditions of his confinement.   To state a cognizable claim for cruel and unusual

23  punishment arising out of conditions of confinement, Plaintiff must allege that there was an

24  act or omission so serious that it amounted to a denial of the minimal civilized measure of

25  life's necessities and that the prison official acted unnecessarily and wantonly for the

26  purpose of inflicting harm.  Here, Plaintiff has only alleged that he was placed in a dirty cell,

27  but does not adequately explain why this amounted to a denial of the minimal civilized

28  measure of life's necessities.  Plaintiff has not stated a claim and will be given leave to

1   amend.

2       Plaintiff has also not stated sufficient facts for a First Amendment claim.  It appears
3   that he wishes to raise a First Amendment claim for retaliation, but has not established any
4   of the five required prongs.

5       Plaintiff should review the standards set forth above before filing his amended
6   complaint, determine if he might have a cognizable claim arising from this sequence of
7   events, and then set out the facts regarding his claims in a clear and concise manner in his
8   amended complaint.

9                   j.      Claims Arising Out of March 9, 2011 Staff Complaint

10      On March 9, 2011, Plaintiff allegedly filed a staff complaint against Defendant
11  Jimenez, which related to a February 10, 2011 incident during which Defendant Jimenez
12  used the incorrect kinds of restraints on Plaintiff.  Plaintiff allegedly asked that the restraints
13  be loosened, Defendants Jimenez and Lopez refused to do so, and then Defendant
14  Jimenez physically abused Plaintiff.  Plaintiff alleges that his rights under the First and
15  Eighth Amendments were violated.

16      Again, Plaintiff has not stated sufficient facts for a First or Eighth Amendment claim.
17  It appears that he wishes to raise a First Amendment claim for retaliation, but does not
18  explain what protected action prompted the retaliation.  It also appears that he wishes to
19  allege an Eighth Amendment claim for excessive force, but again has not alleged that these
20  Defendants used force in a malicious and sadistic manner, with an intent to harm Plaintiff.

21      Plaintiff should review the standards set forth above before filing his amended
22  complaint, determine if he might have a cognizable claim arising from this sequence of
23  events, and then set out the facts regarding his claim in a clear and concise manner in his
24  amended complaint.

25                  k.      Claims Arising Out of Plaintiff's Broken Television

26      Around March 2011, Plaintiff was transferred to RJD and filed a 602 for a television
27  that was broken in retaliation.  Defendant Hall falsely claimed that he interviewed Plaintiff
28  regarding his television.  Plaintiff's rights under the First and Fourteenth Amendments were

1   violated.

2        Plaintiff has not alleged sufficient facts for a First Amendment claim.  It appears that
3   he wishes to raise a First Amendment claim for retaliation, but has not established any of
4   the five required prongs.  Plaintiff has also not alleged sufficient facts for a Fourteenth
5   Amendment property claim, and pursuant to the standard set forth above, it is unlikely he
6   will be able to do so unless he can show he has complied with the requirements of the
7   California Tort Claims Act.

8        Plaintiff should review the standards set forth above before filing his amended
9   complaint, determine if he might have a cognizable claim arising from this sequence of
10  events, and then set out the facts regarding his claim in a clear and concise manner in his
11  amended complaint.

12                    l.        Claims Arising Out of Loss of Legal Property at RJD

13       Plaintiff alleges that unnamed individuals refused to give Plaintiff his 602 complaints
14  and legal papers when he was at RJD in violation of his rights under the First Amendment.
15  He alleges that Sergeant Alvarez and Property Officer Solis only brought Plaintiff his
16  address book.

17       As an initial matter, Plaintiff has not named Sergeant Alvarez and Property Officer
18  Solis as defendants in this action.  If Plaintiff wishes to allege a claim arising out of Sergeant
19  Alvarez and Property Officer Solis' actions, he should name them as a defendants in his
20  amended complaint.

21       Plaintiff has failed to state a First Amendment claim based on the facts alleged thus
22  far.  To state a First Amendment claim for denial of access to the courts, a prisoner must
23  establish that he has suffered an actual injury.  Here, Plaintiff has not alleged any actual
24  injury.  In his amended complaint, Plaintiff must allege specific facts showing how he
25  suffered an actual injury as a result of his legal property not being returned to him.

26                    m.        Claims Arising Out of Medical Conditions

27       Plaintiff makes the general allegation that he has serious medical conditions that
28  require ongoing treatment, and that Defendants have subjected him to cruel and unusual

1   punishment in violation of the Eighth Amendment.

2       Plaintiff has failed to state an Eighth Amendment claim based on the facts alleged.

3   To state an Eighth Amendment, Plaintiff must allege a serious medical need and that the

4   defendant's response to the need was deliberately indifferent.   Here Plaintiff has not

5   explained his medical conditions with any detail, nor has he explained how any named

6   defendants were deliberately indifferent to these conditions.

7       Plaintiff should review the standards set forth above before filing his amended

8   complaint, determine if he might have a cognizable claim, and then set out the facts

9   regarding his claim in a clear and concise manner in his amended complaint.

10  **IV.   CONCLUSION AND ORDER**

11      Plaintiff's Complaint fails to state a claim upon which relief may be granted under §

12  1983.  The Court will provide Plaintiff with the opportunity to amend to cure the deficiencies

13  in his claim.  Lopez, 203 F.3d at 1130; Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir.

14  1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in

15  his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot"

16  complaints).

17      Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state

18  what each named defendant did that led to the deprivation of Plaintiff's constitutional rights,

19  Iqbal, S.Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must be

20  [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at

21  555 (citations omitted).

22      Finally, an amended complaint supercedes the prior complaint, Forsyth v. Humana,

23  Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987),

24  and it must be "complete in itself without reference to the prior or superceded pleading,"

25  Local Rule 220.  Therefore, "[a]ll causes of action alleged in an original complaint which are

26  not alleged in an amended complaint are waived."  King, 814 F.2d at 567 (citing to London

27  v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at

28  1474.

Accordingly, it is HEREBY ORDERED that:

1.   The Clerk's Office shall send Plaintiff a complaint form;

2.   Plaintiff's complaint, filed November 28, 2011, is dismissed for failure to state a claim upon which relief may be granted under § 1983;

3.   Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and

4.   If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   May 22, 2012                          /s/ *Michael J. Seng*
                                      UNITED STATES MAGISTRATE JUDGE